186 So. 695

### BOWEN v. HESTER et al.
### 8 Div. 943.

Supreme Court of Alabama.
Feb. 16, 1939.

J. Foy Guin, of Russellville, for appellant.

Wm. Stell, of Russellville, and Rushton & Rushton, of Montgomery, for appellees.

BOULDIN, Justice.

Bill in equity for the construction of a will and for directions to executors in executing the trusts therein created.

The chief controversy relates to the duration of an annuity to be paid to the wife. of the testator.

This annuity is created in the second paragraph of the will in these words: "It is my further will, and so bind my Executors to pay to my said wife the sum of $50.00 per month during her natural life, or as long as the estate is unsettled, unless she re-marry, and in the event of her re-marriage said payments will cease. Sufficient of my estate shall be retained and invested so as to insure the payment of this annuity. When the estate is finally settled she shall be paid $1,000.00 in cash out of my estate."

In the same paragraph of the will, the testator, Robert L. Bowen, had devised to his wife, Carrie Mae Key Bowen, certain realty in fee, including the properties on which the home was located, and three-fourths interest in gin properties, and directed the executors to pay the balance on street assessments against the residence property, and to keep up the insurance and taxes on the home "until the estate is closed."

■ Appellant claims that construing the will as a whole the testator intended the annuity should be paid her for life.

The express language of the clause creating such annuity clearly negatives such intention. Expressly inserting the alternative "or as long as the estate is unsettled," and providing for a payment to her of a lump sum when the estate is finally settled, clearly contemplated that the estate may be "finally settled" or "closed" while she is still living. In such event the annuity ceases and the lump sum becomes payable. The will devised and bequeathed a residuary estate to brothers and sisters, or descendants of deceased brothers and sisters. The testator was sixty-five years of age on the date of his will, March 11, 1936. He died five weeks later. The wife was then thirty-seven years of age. Nothing appears indicating other than a normal life expectancy on her part. Nothing in the will warrants the view that the annuity should run for life in all events.

■ Appellant, however, by answer and cross-bill alleged in the alternative that construing the will within its four corners, the testator did not contemplate there would be any settlement and closing of the estate within the usual time, and particularly until the trusts created by the will were duly executed.

One of these trusts appears in paragraph 5 of the will, which reads: "I give and bequeath to my nephew, Geo. L. Cleere's son, George Lee Cleere, $500.00, this $500.00 to be deposited in some solvent bank to be selected by my Executors on time deposit, and the interest is to accumulate, and the money with accumulated interest is to be paid out for George Lee to assist him in completing his education at such time and in such manner as my Executors may best determine."

This legatee was a boy of twelve years residing with his parents in Montgomery at the date of the will. He was in the seventh grade in April, 1938, when this cause was submitted for decree.

In the closing paragraph naming his executors and requiring them to give bond, the following appears: "I hereby constitute my said Executors as the trustees of my estate and charge them with continued trust obligations and duties, and especially invest them with power and discretion to sell and private sale any or all of my real or personal property, believing that they will exercise good and prudent judgment thereabout, and if and when my personal and real property in whole or in part is reduced to money, the same is to be disposed of in accordance with this will. It is hereby expressly provided that no heir or beneficiary of my estate shall prosecute any proceeding in any court to dispose of any of my property. This duty and obligation being vested by this will entirely in my Executors."

Like powers are expressly given an administrator with the will annexed.

It is manifest the testator did not contemplate a final settlement and closing of the estate should be had as soon as the twelve months' period fixed by law had passed. Another provision of the will charged cash payments on lands willed to two devisees, with provision that "they may be given such time to pay same as my executors see fit."

The unhampered discretion in the matter of time to sell and dispose of properties at private sale to best advantage is clear from the provisions quoted.

■■ The question then comes, does the will vest in the executors entire discretion in the matter of time to make final settlement, or is final settlement to be postponed until the express trust in favor of the

Cleere child is executed upon his reaching the years for completing his education?

We think there is meaning in the expression "I hereby constitute my executors as the trustees of my estate and charge them with continued trust obligations and duties."

These continued trust obligations and duties included those declared in favor of the wife and the Cleere child.

This annuity in favor of the wife is a substantial legacy, equal to six per cent income on $10,000. It appears the estate disposed of by the will was of the value of about $30,000. In one brief this is given as the value of the residuary estate. Be that as it may, provision for this annuity is made in the first paragraph of the will disposing of the estate.

The will gives evidence that the testator, having no children, regarded his wife as the first object of his care and solicitation. He took care to require the executors to retain and invest so much of the estate as will insure the payment of this annuity.

In the closing paragraph he directs that when the property or any part of it is sold and reduced to money, it shall be disposed of in accordance with the will. This means; 1st, payment of debts, 2nd, funds retained and invested to take care of this annuity, 3rd, depositing the $500 in bank to accumulate and be used by the executors, in virtue of their office as executors-trustees in completing the education of the Cleere youth when that time arrives, and 4th, distribution among residuary legatees. This distribution is to be made in money when and as it comes into the hands of the executors on sale of any part of the property of the estate.

Thus, it appears residuary legatees were not required to await a final settlement before receiving a distribution of such funds as accrued to them from time to time.

While we are clear to the conclusion of the trial court to the effect that no life annuity is created in all events, but terminates upon a final settlement of the estate, we are not of opinion the executors are given an absolute discretion to make a final set-

tlement at any time, despite the continuing trusts charged to them by the testator. We find no warrant in the will for that part of the decree which relieves the executors of the educational trust, authorizes a withdrawal of this fund, investment thereof, in U. S. Savings Bond, and the deposit of same in court to be administered by the court. The court would thus assume the execution of this trust. The testator imposed this duty on his executors as trustees. Theirs is the duty to determine the time and manner in which it shall be used in completing the education of the beneficiary.

We think the trust in favor of the wife runs concurrently with this educational trust. The child, George Lee Cleere, was not made a party to the suit, nor represented by guardian ad litem. When a court of equity assumes jurisdiction over the estate of a minor, he should be dealt with as the ward of the court. Unless the protection of his estate requires the court to displace testamentary trustees, vested with a discretion by the creator of the trust, this should not be done.

It seems to have been the view of the trial court that the final settlement of the estate, the event on which the annuity is to terminate, should not be held up for the performance of the trust relating to so small a legacy as this educational trust. Rather, the inquiry is, should the court take this trust out of the hands of the executors in order to prepare the way for a final settlement and distribution cutting off the annuity? The annuity itself, a valuable legacy, to continue until all other trusts were executed, and the estate ready to be finally closed, was, in our opinion, the intention of the testator.

The decree removing the administration of the estate into the court of equity is affirmed.

The decree construing the will is reversed, and the cause is remanded for further proceedings in harmony with this opinion.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.